**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.                                        **Civ. No. 21-549**

316 75TH STREET SW
ALBUQUERQUE, NM 87121,

70 AKIN FARM
ESTANCIA, NM 87016,

1105 ALEXANDRA STREET SW
ALBUQUERQUE, NM 87121,

11 ALTA CT
EDGEWOOD, NM 87015,

19 AVENIDA ALLEGRE
TIJERAS, NM 87059,

9912 BELLEVUE ST NW
ALBUQUERQUE, NM 87114,

804 CROMWELL AVE SW
ALBUQUERQUE, NM 87102,

     *Defendants-in-rem.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with

Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims

and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

1.     This is a civil action to forfeit and condemn to the use and benefit of the United

States of America property involved in violations of the Controlled Substances Act and 18

U.S.C. § 1956 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), 21 U.S.C. § 881(a)(7), 18 U.S.C. § 981(a)(1)(A), and 18 U.S.C. § 981(a)(1)(C).

## DEFENDANTS *IN REM*

2.     The defendants *in rem* consist of the following real properties with improvements thereon and appurtenances thereto:

316 75th Street SW, Albuquerque, NM 87121, more particularly described as:
> LOT NUMBERED FIFTEEN (15) IN BLOCK NUMBERED TEN (10) OF SKY VIEW WEST ADDITION, AN ADDITION TO THE CITY OF ALBUQUERQUE, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE AMENDED PLOT THERE FOR, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON MARCH 7TH, 1973.

70 Akin Farm, Estancia, NM 87016, more particularly described as:
> TRACT LETTERED "A" BEING SOUTHWEST QUARTER (SW ¼) OF SECTION THIRTY-TWO (32), TOWNSHIP SIX (6) NORTH, RANGE EIGHT (8) EAST OF THE N.M.P.M., AS THE SAME IS SHOWN AND DESIGNATED ON THAT CERTAIN BOUNDARY SURVEY ENTITLED "LANDS OF ESTANCIA REALTY TRUST", PREPARED BY CHRISTOPHER S. BENSON, N.M.P.S., No. 14401, APRIL 25, 2019 AT 9:06 O'CLOCK A.M., AS DOCUMENT NUMBER 2190907 AND FILED IN CABINET G1, SLIDE 75, PLAT RECORDS OF TORRANCE COUNTY, NEW MEXICO; TOGETHER WITH IRRIGATION WATER RIGHTS UNDER NM OSE FILE NO. E-507 AND DOMESTIC WATER RIGHTS UNDER NM OSE FILE NO. E-6336.

> TOGETHER WITH IRRIGATION WATER RIGHTS UNDER NM OSE FILE NO. E-507 AND DOMESTIC WATER RIGHTS UNDER NM OSE FILE NO. E-6336

1105 Alexandra Street SW, Albuquerque, NM 87121, more particularly described as:
> LOT NUMBERED THIRTEEN-P-ONE (13-P1) IN BLOCK NUMBERED ONE (1), OF SAGE POINTE SUBDIVISION, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT ENTITLED, "PLAT FOR SAGE POINTE SUBDIVISION, WITHIN THE TOWN OF ATRISCO GRANT, PROJECTED SECTION 34, TOWNSHIP 10 NORTH, RANGE 2 EAST, N.M.P.M., CITY OF ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO ON JANUARY 30, 2004 IN PLAT BOOK 2004C, PAGE 35.

11 Alta CT, Edgewood, NM 87015, more particularly described as:
> TRACT "A" OF THE LANDS OF JENSEN FAMILY, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT ENTITLED, "A PLAT OF TRACTS A, B, C AND D, LANDS OF JENSEN FAMILY, LIVING SITUATE WITHIN SECTION 1, TOWNSHIP 10 NORTH, RANGE 6 EAST, N.M.P.M., BERNALILLO COUNTY, NEW MEXICO, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON JUNE 10, 1992, IN PLAT BOOK 92C, PAGE 113.

19 Avenida Allegre, Tijeras, NM 87059, more particularly described as:

LOT NUMBERED FOUR-A-TWO (4-A-2) OF VISTA DE MANANA SUBDIVISION, BEING A REPLAT OF LOT 4A, WITHIN SECTION 8, T. 10 N., R. 6 E., N.M.P.M., BERNALILLO COUNTY, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON SAID PLAT, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON MARCH 9, 1993, IN PLAT BOOK 93C, PAGE 68.

9912 Bellevue St NW, Albuquerque, NM 87114, more particularly described as:

LOT NUMBERED (4) IN BLOCK NUMBERED THIRTY-FOUR (34) OF THE AMENDED PLAT OF UNIT 2 OF THE KNOLLS OF PARADISE HILLS, A SUBDIVISION WITHIN THE TOWN OF ALAMEDA GRANT, ALBUQUERQUE, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT OF SAID ADDITION, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON FEBRUARY 8, 1979, IN VOLUME D9, FOLIO 66.

804 Cromwell Ave SW, Albuquerque, NM 87102, more particularly described as:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF BERNALILLO, STATE OF NEW MEXICO AND IS DESCRIBED AS FOLLOWS:
PARCEL 1:
A CERTAIN TRACT OF LAND SITUATED IN THE CITY OF ALBUQUERQUE, KNOWN AS 804 WEST CROMWELL AVENUE MEASURING FROM EAST TO WEST (39) FEET AND FROM NORTH TO SOUTH (50) FEET, BOUNDED ON THE NORTH BY WEST CROMWELL AVENUE; ON THE SOUTH BY LAND FORMERLY OF ELOY MARTINEZ; ON THE EAST BY LAND FORMERLY OF LOUIS CLARK; ON THE WEST BY LAND OF JUAN ABEYTA. THIS TRACT OF LAND IS MORE PARTICULARLY KNOWN AS TRACT 30 AS SHOWN ON THE MAP OF M.R.G.C.D. CONS. DIST. #40
PARCEL 2:
A CERTAIN A TRACT OF LAND SITUATE IN THE AFORESAID COUNTY AND STATE, WITHIN THE TOWN OF ALBUQUERQUE GRANT, AND BOUNDED: ON THE NORTH BY A PUBLIC ALLEY; ON THE SOUTH BY LAND NOW OR FORMERLY OF ANDY JACKSON; ON THE EAST BY LAND NOW OR FORMERLY OF LUIS CLARK; ON THE WEST BY LAND NOW OR FORMERLY OF MARY HICKS.
THE ABOVE DESCRIBED TRACT IS SHOWN AND DESIGNATED AS TRACT NO. 31-A ON MAP NO. 40 OF THE SURVEY OF THE MIDDLE RIO GRANDE CONSERVANCY DISTRICT.
PARCEL 3:
TRACT 32-A, MIDDLE RIO GRANDE CONSERVANCY DISTRICT, MAP 40.
PARCEL 4:
LOT EIGHTEEN (18) OF THE RIVERSIDE ADDITION, AN ADDITION TO THE CITY OF ALBUQUERQUE, NEW MEXICO AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT OF SAID ADDITION FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO ON DECEMBER 30, 1946 AND WHICH ARE ALL MORE PARTICULARLY DESCRIBED ON THAT CERTAIN BOUNDARY SURVEY PLAT PREPARED BY GARY E. GRITSKO, NMPS NO. 8686, DATED APRIL 7, 2014 AS FOLLOWS:
A CERTAIN TRACT OF LAND SITUATE WITHIN THE TOWN OF ALBUQUERQUE GRANT, IN PROJECTED SECTION 19, TOWNSHIP 10 NORTH, RANGE 3 EAST, N.M.P.M., CITY

OF ALBUQUERQUE, BERNALILLO COUNTY, NEW MEXICO, BEING COMPRISED OF TRACTS 30-B-3; 31-A AND 32-A, AS SHOWN ON THE MIDDLE RIO GRANDE CONSERVANCY DISTRICT PROPERTY MAP NO. 40, TOGETHER WITH LOT NUMBERED EIGHTEEN (18) OF RIVERSIDE ADDITION, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT THEREOF, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO ON DECEMBER 30, 1946 IN VOLUME B1, FOLIO 172. SAID ENTIRE TRACT BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 18, RIVERSIDE ADDITION, BEING A POINT ON THE NORTHERLY RIGHT OF WAY LINE OF OF EROY AVENUE SW, WHENCE THE A.G.R.S. CONTROL STATION "8_L 13" HAVING N.M. STATE PLANE COORDINATES OF N=1481048.91, E=1518508.493, (CENTRAL ZONE, NAD 83), BEARS S 06 DEG. 23' 03" E, 1210.60 FEET DISTANT; THENCE

N 01 DEG. 10' 13" W, 104.76 FEET TO THE NORTHWEST CORNER OF SAID TRACT, BEING A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF CROMWELL AVENUE SW; THENCE

S 89 DEG. 31' 29" E, 102.39 FEET ALONG SAID RIGHT OF WAY LINE TO THE NORTHEAST CORNER OF SAID TRACT; THENCE

S 00 DEG. 02' 38" E, 52.90 FEET TO AN ANGLE POINT; THENCE S 89 DEG. 45' 27" W, 11 .80 FEET TO AN ANGLE POINT; THENCE

S 03 DEG. 48' 27" W, 49.08 FEET TO THE SOUTHEAST CORNER OF SAID TRACT, BEING A POINT ON THE NORTHERLY RIGHT OF WAY LINE OF EROY AVENUE SW; THENCE

S 88 DEG. 40' 27" W, 85.25 FEET ALONG SAID RIGHT OF WAY LINE TO THE POINT OF BEGINNING.

(hereafter collectively referred to as "Defendant Real Property").

## JURISDICTION AND VENUE

3.      The Defendant Real Property is now, and during the pendency of this action will

be, in the jurisdiction of this Court.

4.      The United States will post notice of the complaint on the property as required by

18 U.S.C. § 985(c)(1)(B). Posting of notice on the Defendant Real Property establishes *in rem*

jurisdiction over the property. The United States will also serve notice of the complaint, along

with a copy of the complaint, on the property owner(s) pursuant to 18 U.S.C. § 985(c)(1)(C) or

18 U.S.C. § 985(c)(2).

5.      The United States District Court for the District of New Mexico has subject

matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.      Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.

**FACTS**

7.      In 2006, Francisco Navarro was charged with multiple state offenses related to distributing cocaine; Navarro pled guilty to trafficking a controlled substance in 2007. In 2009, Navarro was arrested by the Drug Enforcement Administration (DEA) when he was found to be in possession of approximately one kilogram of cocaine. In the resulting criminal case, Navarro was convicted in the United States District Court for the District of New Mexico of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) in 2010 and sentenced to sixty months incarceration. He was released from the Bureau of Prisons (BOP) in 2013.

8.      The drastic change in finances between Navarro's 2013 release from prison to January 2020, combined with unexplained cash income and unsupported checks from individuals and small businesses, led investigators to believe Navarro was operating a large scale and successful drug trafficking organization (DTO) and participating in money laundering. Investigators further believe the Navarro DTO arose from contacts made during incarceration with members of Mexican drug trafficking organizations.

9.      Navarro was incarcerated with an individual named Elmer Gonzalez-Medina for a portion of his sentence. Gonzalez-Medina was serving a 188-month sentence for a conviction of 21 U.S.C. 846, 841(a)(1), Conspiracy to Distribute and Possession with Intent to Distribute Methamphetamine. A criminal complaint filed by the DEA in the Central District of California reported Gonzalez-Medina was the head of a DTO responsible for distributing multiple pounds of methamphetamine. After his release from prison in 2013, investigators believe Navarro

remained in contact with Gonzalez-Medina in part to facilitate drug trafficking activity by the Navarro DTO. Investigators reviewed phone calls from 2018 between Navarro and Gonzalez-Medina from the Taft Correctional Institution, recorded and maintained pursuant to BOP protocol. Although the conversations were often vague and in coded language, investigators believe they demonstrate that Navarro is indebted to Gonzalez-Medina because the latter provided introductions to sources of narcotics supply. Consistent with this conclusion, Navarro deposited $300 (the maximum allowable amount) into Gonzalez-Medina's BOP account eighteen times from February 2016 to April 2019, for a total of $5,400.

10.     Investigators determined in 2019 that the Navarro DTO was involved in bulk cash smuggling of illegal drug proceeds within the United States and across the border into Mexico. Investigators identified five vehicles acquired by the DTO that had aftermarket hidden compartments or evidence of tampering to access natural voids. Two of the vehicles were searched upon returning to the U.S. from Mexico and had empty compartments, leading investigators to suspect they were used to transport currency into Mexico.

11.     In October 2019, a Buick Enclave operated by Anthony Smith, a friend and associate of Navarro, was interdicted in Texas by local law enforcement. The Buick's hidden compartments contained approximately $846,000.00 in U.S. currency. Smith subsequently pleaded guilty to 18 U.S.C. § 1956(h), conspiracy to commit money laundering.  In an admission of facts, Smith admitted that the money was proceeds of drug trafficking and was destined for Albuquerque.

12.     Law enforcement executed multiple search warrants in connection with this investigation. The Federal Bureau of Investigation (FBI) utilized search warrants to collect real-time global positioning system (GPS) location data for Francisco Navarro's primary cell phone during multiple periods between February 2019 and January 2020. On January 29, 2020, the FBI

and partner agencies executed search warrants on nine locations owned by or connected to Francisco Navarro. Law enforcement seized extensive document evidence, cellular phones, marijuana plants, and multiple vehicles with hidden compartments; investigators also recovered 4.8 kilograms of cocaine and multiple firearms from compartments in the vehicles. Information from the search warrants will be used throughout the following paragraphs, including GPS location data received from carriers and text communications recovered from cellular phones by the FBI.

13.     Over the course of this investigation, law enforcement collected and analyzed information and documents related to Francisco Navarro's purported legitimate income. Navarro claimed to operate a legitimate business called "Navarro's Paint and Body," with an address of 7512 Rainwater Rd SW, Albuquerque, NM. On 2018 and 2019 credit applications, NAVARRO listed this business as his employer, with various titles such as supervisor and "GM," and claimed a salary of $8,900 to $17,000 per month. Navarro also maintained a Bank of America checking account (last four numbers 1889) in the name of "Francisco J Navarro Sole Prop DBA Navarros Paint and Body." Navarro registered entities "Navarro's Paint and Body" and "Navarro's Mobile Paint and Body" with the New Mexico Department of Taxation and Revenue (NM TRD) in 2008. The former was active as a business with NM TRD from June 2008 to September 2008; the latter was registered in September 2008 and remains active. Despite registering the two entities, Navarro never submitted gross receipts taxes for either business. Navarro owes tax debt to the state of New Mexico from a prior business, which indicates that he is aware of the gross receipts tax process. Investigators have been unable to locate an automotive shop called "Navarro's Paint and Body." The address 7512 Rainwater Rd SW is a single-family home owned by Navarro's mother, Candelaria Duran.

14.     Investigators identified transactions conducted in 2017 and 2018 by Francisco Navarro in connection with a small automotive dealer and repair shop called Top Auto Sales and Bodywork (Top Auto). Top Auto is the sole proprietorship of Ruben Montoya, located at 1205 Old Coors Dr, Albuquerque, NM. Investigators believe Montoya and his son Ruben Ken Montoya operate the business together.

15.     In 2017, Navarro utilized cashier's checks drawn from Bank of America account 1889 to purchase eight (8) vehicles from Insurance Auto Auctions (IAA) through Top Auto's account; the total cost of the vehicles was $86,214.39. One of the vehicles, a 2016 Cadillac XTS, was later registered by Brittany Gonzales, Navarro's girlfriend, and traded in for another vehicle. On registration documents, Gonzales represented the vehicle as a purchase from Top Auto. Two of the vehicles were subsequently registered to known associates of Navarro: Jude Morgas and Ubaldo Zayas-Acuria. Two additional vehicles were registered by individuals unknown to the investigation. Investigators were unable to locate registrations for the remaining three vehicles.

16.     Top Auto was among the locations where law enforcement executed search warrants on January 29, 2020. Investigators recovered extensive motor vehicle transaction records from Top Auto, such as bills of sale, title applications, and temporary tags. When subsequently questioned by investigators, Ruben Montoya said that Francisco Navarro is not an employee or owner of the businesses but utilizes Top Auto to repair vehicles for resale. Montoya estimated Top Auto has repaired a few dozen vehicles for Navarro. Montoya has allowed Navarro to use Top Auto's IAA account for an added fee. Montoya purchased one 1963 Impala from Navarro around 2017 but reported no other business purpose for paying Navarro.

17.     Investigators believe the automotive activity in association with Top Auto does not support a conclusion that Navarro operated a lawful and profitable business. Investigators further suspect that Navarro's automotive business is primarily intended to create an appearance

of legitimacy and provide vehicles for the use of the DTO, both of which facilitate drug trafficking, money laundering, and bulk cash smuggling activity.

18.     Law enforcement conducted an extensive financial investigation of Francisco Navarro, including a detailed analysis of Navarro's Bank of America checking account 1889 for the period of January 2018 through December 2019. On January 1, 2018, the balance of the account was $5,703.32.  From January 2018 through December 2019, credits to the account totaled $415,492.46.  The primary and secondary sources of credits were cash deposits and checks, respectively.  Navarro made fifty-five (55) cash deposits totaling $212,836 into the account, either personally or by causing others to make such deposits. Navarro or third parties also deposited 23 checks, totaling $177,711.75. Cash and check deposits together constituted 94% of account income. Debits from the account during the analysis period totaled $381,031.25; however, Navarro withdrew no cash from the account.

19.     Investigators believe the following checks deposited into account 1889 and totaling $150,000 represent attempts by Navarro to utilize seemingly legitimate businesses to launder illicit funds.

| Date of Deposit | Amount (U.S.D.) | Remitter | Payee | Memo/Description (as written) |
|---|---|---|---|---|
| 10/10/2018 | 20,000.00 | Ruben J. Montoya | Navarro's Paint and Body | Work on 58 imp |
| 4/26/2019 | 15,000.00 | Ruben J. Montoya | Navarro's Mobile Paint and Body | |
| 4/26/2019 | 15,000.00 | Ruben Montoya Sole Prop | Navarro's Mobile Paint and Body | For 1963 Chey work |
| 5/2/19 | 20,000.00 | Maez Construction | Navarro Paint & Body | Desert oasis Welding |
| 8/9/2019 | 6,000.00 | State Employees Credit Union | Francisco Navarro | Roof Replacement 401 Barberry St |
| 9/3/2019 | 2,500.00 | Thomas Law, Kay Law | Francisco Navarro | Patio Cover |
| 9/9/19 | 2,000.00 | Pro Painting Services LLC | Francisco Navarro | Re-stucco |
| 9/25/19 | 5,000.00 | JC Windows & Doors LLC | Francisco Navarro | |
| 11/4/19 | 25,000.00 | Maez Construction | Francisco Navarro | |
| 11/25/19 | 40,000.00 | JC Windows & Doors LLC | Francisco Navarro | US Cryotherapy |
| *TOTAL* | $150,500.00 | | | |

20.     Investigators searched items recovered during the search warrant at Top Auto for documents supporting the checks from Ruben Montoya to Navarro for work on a "58 imp" (believed to be a 1958 Chevrolet Impala) and "1963 Chey" (believed to be a 1963 Chevrolet). Investigators were unable to identify any such vehicles or verify the legitimacy of the checks.

21.     Investigators believe the checks remitted by construction contractors or with references to construction work are also part of a money laundering scheme by Navarro and associates. In 2018 and 2019, Navarro was not a licensed contractor in the state of New Mexico, nor did physical or electronic surveillance place Navarro at known construction job sites for a length of time suggesting he was involved in the work. Navarro's associate Miguel Salais operated a company called Straight Edge Construction (SEC) during this period, as well as

residing in a property owned by Navarro via a real estate contract. Investigators directly associated the following checks to construction permits acquired by SEC or jobs where Salais was involved in the contracting: $20,000 in May 2019; $6,000 in August 2019, $2,500 and $5,000 in September 2019, and $40,000 in November 2019. In one case, agents interviewed a customer who explained that he/she hired SEC to complete a construction job but that Salais instructed him/her to make the check payable to Navarro. The customer did not recall knowing or meeting Navarro, particularly as an employee or employer of Salais.

22.     From 2014 to 2019, Navarro entered at least ten real estate contracts (RECs) to acquire real property; seven of the contracts were serviced by American Escrow Company (AEC), an Albuquerque escrow firm.  Until a policy change in 2020 due to the COVID-19 pandemic, AEC was the only escrow company in Albuquerque that accepted cash payments. Additionally, records of AEC indicated that employees did not record the identity of individuals making payments toward REC accounts. For these reasons, RECs, particularly serviced by AEC, are an effective vehicle for laundering illicit funds.

23.     From January 2018 to December 2019, Navarro, or others acting on his behalf, made approximately $329,975.89 in cash payments to Navarro's RECs through AEC.  Once received, AEC deposits the cash in a financial institution and disburses funds to the sellers on the RECs in the form of bank transfers or checks. Investigators believe NAVARRO has continuously utilized AEC to service RECs to conceal the illicit proceeds of drug trafficking.

24.     Investigators also examined the financial activity and identifiable income of Brittany Gonzales, Navarro's girlfriend, and the mother of at least one of his children. Gonzales was employed parttime as a medical assistant or technician at the Lovelace Women's Hospital in Albuquerque. Her pay was electronically deposited to her Wells Fargo checking account with last four numbers 4928 and totaled $24,271.16 for the statement cycles of January 2018 through

December 2019. In a text message exchange with associate Ruben Lujan on November 15, 2018, NAVARRO stated that he "just made her [Gonzales] quit her job to watch the baby." Wells Fargo records show a decline in pay from November 2018 to December 2019 with biweekly payroll deposits ranging from approximately $10 to $375. During the analysis period, Gonzales and Navarro had multiple text message conversations corroborating the decline in employment income and discussing Navarro providing her with money. On August 6, 2018, Gonzales stated that Navarro doesn't want her to work, and she is "draining [her] savings and overdrafting." During the same conversation, Navarro stated "I dont know your Bill's all u have to do is tell me and I will pay them".  On October 16, 2019, Gonzales messaged Navarro: "Babe I'm sorry to bother you I literally hate asking but I have to pay my bills one of them pulled out and overdrafted me.". On January 1, 2020, Gonzales stated that "it's impossible for [her] to save with no income". Investigators believe Navarro provided Gonzales with cash proceeds of drug trafficking and money laundering to deposit in her account and pay bills.

25.     During the investigation, Brittany Gonzales had three accounts at Wells Fargo Bank; most of her banking activity was in checking account 4928. Investigators analyzed account activity for the January 2018 to December 2019 statement cycles. Gonzales conducted regular unexplained cash deposits in 2018 and 2019, frequently visiting multiple automatic teller machines (ATMs) in a single day or the same ATM multiple times per day. During the analysis period, Gonzales, or others acting on her behalf, made 105 cash deposits into account 4928, for a total of $101,337; cash withdrawals were comparatively minimal, totaling only $3,120.

26.     Like Navarro, Gonzales purchased a real property via an REC: 1105 Alexandra St SW in Albuquerque, New Mexico. In 2018 and 2019, Gonzales made regular cash payments to the contract through American Escrow, totaling $40,780.72.

27.     Summary of Francisco Navarro and Brittany Gonzales cash activity, January 2018

through December 2019:

| Account(s) | Cash Activity |
|---|---|
| Bank of America 1889 | $ 212,836.00 |
| Wells Fargo 4928 | $ 101,337.00 |
| American Escrow | $ 370,756.61 |
| *TOTAL* | $ 684,929.61 |

28.     As previously summarized, federal law enforcement executed search warrants on

nine locations in Albuquerque on January 29, 2020. The following locations among the

Defendant Property were searched:

316 75th St SW

804 Cromwell Ave SW

1105 Alexandra St SW

9912 Bellevue St NW

29.     The real property 316 75th Street Southwest is a single-family dwelling in

Albuquerque, Bernalillo County, New Mexico. On May 21, 2009, Edgar Rios signed an REC to

purchase 316 75th St from current Navarro associate Ruben D. Lujan. The purchase price was

$165,000 with no down payment; the contract stipulated that the balance be paid in full by

August 1, 2019. The contract appointed American Escrow Company as the escrow agent. On

March 5, 2019, Lujan and Rios signed an amendment to the REC, removing the August 1, 2019,

call date. Investigators believe Rios is a proxy and Navarro is the true owner of 316 75th Street.

The GPS location data acquired by the FBI for Navarro's primary cell phone placed Navarro at

316 75th St on seventy-nine (79) days during active periods between February 2019 and January

2020. On some days, he visited the location multiple times. Physical and video surveillance

conducted by the FBI confirmed on numerous occasions that Navarro was in fact at the

residence. Agents also observed that Navarro had keys to the residence that he used to unlock

and lock the front door.  Navarro has allowed close associates to use the property and met with a

contractor regarding repairs to the property.

      30.     On January 10, 2019, Navarro and seller Ruben Lujan discussed amending the

REC on 316 75th Street by text message. Lujan messaged Navarro: "Think about if you want to

change the name or keep it under your cousin. It's up to you brother. Whatever you want to do".

In a follow up text message conversation on March 5, 2019, Lujan messaged Navarro: "Ok cool

brother... And tell your cousin those papers are ready to be signed at the escrow brother." In a

subsequent interview with investigators, Lujan denied discussing 316 75th St with Navarro and

said that he believed Rios was the only owner of the property.

      31.     On January 23, 2019, Navarro sent the following text message to Edgar Rios,

listed in his phone contacts as "PRIMO [cousin] EDGER:" "Primo could you send me all your

information I have to call the insurance or if you want you could call or just give me information

and I will call and act like you I got a roof leak". Rios responded: "yea what info do you need".

On March 5, 2019, Navarro again text messaged Rios: "Primo when u have time today could u

go sign some papers at the   Escrow company American Eagle thank u." On March 6, 2019,

Navarro texted Rios and asked if he signed the papers; Rios confirmed and asked if Navarro

wanted a picture of the copy. Navarro responded: "Yes please I got to make sure he didn't burn

me". Rios then sent Navarro a picture of a blank copy of the amendment to the REC on 316 75th

Street.

      32.     During the execution of search warrants on January 29, 2020, Navarro's associate

Ubaldo Zayas-Acuria was present at 316 75th St. Law enforcement located two handguns in

vehicles parked in the driveway and a money counter hidden in the wall of the residence. Law

enforcement seized four vehicles from the property, including a 2015 Ford Transit van and two

2016 Honda Accords, all previously purchased from Insurance Auto Auctions using the account

of Top Auto. In the subsequent search of the Ford Transit, agents located an aftermarket hidden

compartment and recovered four brick-shaped packages of a white powder. The powder tested

positive for cocaine and the packages had a combined weight of 4.8 kilograms. In one of the

2016 Honda Accords, agents located a hidden compartment and recovered seven handguns

vacuum sealed in plastic bags. In October 2017, Navarro sent a text a message to a vehicle

transporter to request pick up of this vehicle after the purchase from Insurance Auto Auctions.

The vehicle was subsequently registered to Zayas-Acuria.

33.     On April 24, 2014, Francisco Navarro signed an REC to purchase 804 Cromwell

Avenue Southwest in Albuquerque, Bernalillo County, New Mexico. The purchase price was

$45,000.00 with a down payment of $8,000.00. The property at 804 Cromwell is a single-family

dwelling; however, the property is split into four separate parcels, collectively identified with

this address. The REC included all four parcels. On June 22, 2015, a warranty deed was filed to

convey 804 Cromwell from Manuel L. Armijo to Navarro, indicating that Navarro paid off the

REC. On May 26, 2016, Navarro executed a warranty deed gifting one of the four parcels to

Jennifer Sanchez. Based on official imagery of the Bernalillo County Assessor's Office, this

parcel is the southwest corner of the property and contains a portion of the residence.

34.     On January 29, 2020, federal law enforcement officers executed a search warrant

at 804 Cromwell. The property was occupied by Kevin Kaiser, a known criminal associate of

Navarro. The interior of the residence was retrofitted to cultivate marijuana and hemp, with

fluorescent lighting, fans, and an irrigation system.  Agents also located marijuana dried and

packed in plastic zipper bags, consistent with packaging for distribution. In total, law

enforcement recovered approximately 1,020 marijuana plants from the residence.

35.     On January 13, 2017, Brittany Gonzales signed an REC to purchase 1105 Alexandra Street Southwest in Albuquerque, Bernalillo County, New Mexico, from seller Mario A. Chavez. The purchase price was $154,873.32 with a $20,000.00 down payment; the contract stipulated that the balance be paid in full by February 15, 2019. On December 7, 2018, Gonzales and Chavez signed an amendment to the contract, extending the maturity date to July 15, 2020. From January 2018 to December 2019, Gonzales made $40,780.72 in cash payments, or directed others to make payments, to the REC through American Escrow Company. On January 17, 2020, Francisco Navarro and third parties paid off Gonzales's REC on 1105 Alexandra. Navarro provided a Bank of America cashier's check for $66,000.00; Ruben J. Montoya provided a Bank of Albuquerque check for $14,000.00; Jorge Luis Rascon provided a Bank of Albuquerque check for $9,000.00; and Miguel Andrade provided a Bank of the West check for $20,000.00. Investigators have identified no legitimate reason for the third parties to make such payments to Gonzales's REC. In addition, the activity is similar to suspected money laundering activity identified in Navarro's Bank of America account, where Navarro deposited checks from third parties, including Ruben Montoya, with no legitimate business purpose.

36.     During the execution of the search warrant at 1105 Alexandra St SW on January 29, 2020, law enforcement recovered $1,760 in U.S. currency from Brittany Gonzales's purse and $1,056 from Raymond Gonzales's wallet. Raymond Gonzales is Brittany Gonzales's father and connected to the criminal activity in this matter.

37.     On December 22, 2017, Francisco Navarro and Brittany Gonzales signed an REC to purchase 9912 Bellevue Street Northwest, a single-family dwelling in Albuquerque, Bernalillo County, New Mexico. The total purchase price was $394,999.00 with a down payment of $40,000. For earnest money, Navarro provided seven Postal Money Orders for $1,000 each. Navarro and Gonzales paid the remainder of the down payment with two Cashier's Checks: one

check for $16,515.00 purchased with Navarro's Bank of America account and one check for

$16,515.00 purchased with Gonzales's Wells Fargo account. From January 2018 through

February 2020, Navarro and Gonzales made $131,056.00 in cash payments, or directed others to

make payments, to the REC through American Escrow Company. From March 2020 through

August 2020, Navarro and Gonzales made an additional $17,300.00 in money order payments, or

directed others to make payments, to the REC through American Escrow Company.

38.     During the execution of the search warrant on January 29, 2020, law enforcement

encountered Francisco Navarro in the master bedroom of 9912 Bellevue St NW. Navarro was the

only individual present at the residence. Investigators recovered $2,428 in U.S. currency from

Navarro's wallet.  Investigators also recovered numerous cell phones, including two phones

located in the master bathroom sink. Investigators believe Navarro intended to destroy the

phones with water to obstruct the recovery of evidence.

39.     On October 6, 2017, Francisco Navarro signed an REC to purchase 11 Alta Court,

a single-family dwelling in Edgewood, Bernalillo County, New Mexico. The purchase price was

$359,000.00 with a down payment of $40,000.00. For earnest money, Navarro provided three

Postal Money Orders: two for $1,000.00 and one for $500.00. Navarro paid most of the

remaining down payment with a Cashier's Check for $36,828.50 purchased from his Bank of

America account. From January 2018 through March 2020, Navarro made $70,200.00 in cash

payments, or directed others to make payments, to the REC through American Escrow Company.

From April 2020 through August 2020, Navarro made an additional $11,800.00 in money order

payments, or directed others to make payments, to the REC through American Escrow Company.

40.     On November 3, 2017, Francisco Navarro signed an REC to purchase 19 Avenida

Allegre, a vacant residential lot in Tijeras, Bernalillo County, New Mexico. The purchase price

was $59,999.00 with a $15,000.00 down payment. For earnest money, Navarro provided three

Postal Money Orders for $1,000.00 each. Navarro paid most of the remaining down payment with a $9,121.79 Cashier's Check purchased with his Bank of America account. From January 2018 through November 2019, Navarro made $32,670.00 in cash payments, or directed others to make payments, to the REC through American Escrow Company. From March 2020 through August 2020, Navarro made an additional $3,619.90 in money order payments, or directed others to make payments, to the REC through American Escrow Company.

41.     On April 30, 2019, Francisco Navarro signed an REC to purchase 70 Akin Farm Road in Estancia, Torrance County, New Mexico. The property has a single-family dwelling and agricultural fields, with total acreage of approximately 158. The purchase price was $300,000.00 with a $50,000.00 down payment. Navarro purchased a $42,666.56 cashier's check with funds from his Bank of America account for the bulk of the down payment. From May 2019 through February 2020, Navarro made $49,500.00 in cash payments, or directed others to make payments, to the REC through American Escrow Company. From March 2020 through August 2020, Navarro made an additional $29,166.00 in money order payments, or directed others to make payments, to the REC through American Escrow Company.

42.     In addition to the discussed Defendant Property, agents executed search warrants on additional properties on January 29, 2020, including 7512 Rainwater Road SW and 4405/4409 Butler Lane SW in Albuquerque.

43.     At Candelaria Duran's property 7512 Rainwater SW, investigators recovered $26,100 in currency, body armor, a WASR-10 AK47 rifle and magazine in a bedroom, and a money counter in a second bedroom. The currency was on a bed inside of a plastic grocery bag and was divided into three separate bundles. Each bundle was wrapped with rubber bands and another rubber band held all three bundles together. The currency consisted of multiple denominations, primarily 100s and 20s.

44.     At Francisco Navarro's property 4405/4409 Butler Lane SW, law enforcement discovered $12,000 in U.S. currency. The bulk of the currency, $10,636, was concealed within the housing unit of a bathtub. The currency was in a plastic grocery bag in multiple bundles. The bundles were wrapped with rubber bands.  The currency consisted of multiple denominations, primarily 20s. A money counter was recovered in another room. The remainder of the currency was scattered through the residence. Agents also located marijuana, cell phones, a firearm, documents, and VIN plates, and discovered several classic cars in a detached garage.

45.     Navarro has maintained access, dominion, and control over all his real property, as evidenced by GPS pings on his cellular phone.

### FIRST CLAIM FOR RELIEF

46.     The United States incorporates by reference the allegations in paragraphs 1 through 45 as though fully set forth.

47.     Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

48.     Defendant Real Property was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

49.     The United States incorporates by reference the allegations in paragraphs 1 through 45 as though fully set forth.

50.     Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture property involved in a transaction or attempted transactions in violation of 18 U.S.C. § 1956 or property traceable to such property.

51.     The Defendant Real Property was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956 or is traceable to such transactions and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

52.     The United States incorporates by reference the allegations in paragraphs 1 through 45 as though fully set forth.

53.     Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity or conspiracy to commit such offense.

54.     The Defendant Real Property constitutes or is derived from proceeds traceable to an offense under 18 U.S.C. § 1956 or conspiracy to commit such offense and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## FOURTH CLAIM FOR RELIEF

55.     The United States incorporates by reference the allegations in paragraphs 1 through 45 as though fully set forth.

56.     Title 21, United States Code, Section 881(a)(7) subjects to forfeiture because it was used or intended to be used, in any manner or part, to commit or to facilitate the commission

of a violation of the Controlled Substances Act punishable by more than one year's imprisonment.

57.     The Defendant Real Property was used or intended to be used, in any manner or part, to commit or to facilitate the commission of a violation of the Controlled Substances Act punishable by more than one year's imprisonment and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

WHEREFORE: Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs, and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Dated: 6/9/2021

Thomas C. Neale, Special Agent
Federal Bureau of Investigation

23